UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TYSON WAYNE CUMMINS, | § | |
| *Plaintiff*, | § § § | |
| v. | § § | CASE NO. 4:17-CV-1309 |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | § § § § | |
| *Defendant*. | § § | |

## **MEMORANDUM AND ORDER**

Plaintiff seeks judicial review of a final decision of the Acting Commissioner of the Social Security Administration denying his application for disability insurance benefits. Plaintiff argues that the administrative law judge ("ALJ") improperly refused to allow his wife to assist him at the disability hearing, the ALJ failed to fully and fairly develop the record, and the ALJ failed to consider all the evidence in evaluating Plaintiff's case. Pending before the Court for disposition pursuant to 28 U.S.C. § 636(c) are the parties' cross-motions for summary judgment (ECF Nos. 13 and 14). Having reviewed the motions, the record, and the applicable law, the Court GRANTS Plaintiff's motion, DENIES Defendant's motion, VACATES the Acting Commissioner's decision, and REMANDS this matter to the agency with instructions.

1

# I.
# FACTUAL OVERVIEW

In July 2013, Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, claiming that he had been unable to work due to disability since February 18, 2012. The agency denied Plaintiff's application initially and upon reconsideration. Plaintiff then requested a hearing.

On October 19, 2015, an administrative law judge held a 31-minute video hearing. (R. 45–69.) At the commencement of the hearing, the following exchange occurred:

> ALJ: You do not have a representative?
>
> Plaintiff: No, sir. But, is my wife allowed to be in here?
>
> ALJ: Let's talk a little bit about this first. Is your wife the one that's been running all the—been documenting your case and everything?
>
> Plaintiff: Yes, sir. I—
>
> ALJ: What does she do for a living?
>
> Plaintiff: She's an office manager.
>
> ALJ: For a law firm?
>
> Plaintiff: No, sir, it's a janitorial company. But, I had to take a sedative to come here.
>
> ALJ: You're not capable of conducting the hearing here today?
>
> Plaintiff: Because I can't be around a lot of people because I'll have panic attacks.

| ALJ: | What I'm asking you is are you going to be able to do your hearing? If you're sedated not be able to have the hearing [*sic*], we'll have to postpone. |
|---|---|
| Plaintiff: | Well, is she not allowed to be in here with me because she knows everything that's going on. |
| ALJ: | Well, but, I want to talk to you. So, the question to you is whether or not you're going to be able to answer my questions. |
| Plaintiff: | Yes, sir. |
| ALJ: | You want to go forward today without representation? |
| Plaintiff: | Yes, sir. |

(R. 47–48.)

The hearing proceeded. The ALJ questioned Plaintiff about his background, previous work, and medical history. After Plaintiff finished testifying, the ALJ asked whether Plaintiff wanted to "bring [his] wife in" to testify but cautioned, "She can say a little something, but I don't want her just repeating everything you just told me." (R. 65.) Plaintiff declined, stating, "I'm sure she's going to tell you I'm not the same as I was before." (*Id.*) The ALJ then heard testimony from the vocational expert before closing the hearing.

On November 10, 2015, the ALJ issued a written decision (R. 24–39) concluding that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from February 18, 2012, the alleged onset date, through March 31,

3

2015, the date last insured" (R. 38) and therefore not entitled to disability benefits. The ALJ's decision evaluated Plaintiff's claim under the standard five-step sequential inquiry. *See, e.g.*, *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The ALJ's decision was favorable to Plaintiff at Steps One, Two, and Four but unfavorable at Steps Three and Five.[1]

Plaintiff timely requested that the Appeals Council review the ALJ's decision. After the Council denied that request, Plaintiff filed this suit seeking judicial review under 42 U.S.C. § 405(g). As relief, Plaintiff asks that the agency's decision be

---

[1] At Step One, the ALJ found that Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of February 18, 2012 through his date last insured of March 31, 2015." (R. 29.) At Step Two, the ALJ found that "[t]hrough the date last insured, [Plaintiff] had the following severe impairments: diabetes mellitus, depression, obesity, arthralgias, and neuropathy." (R. 29.) At Step Three, the ALJ found that "[t]hrough the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (R. 33.) Before moving to Step Four, the ALJ assessed Plaintiff's residual functional capacity (RFC) as follows:

> [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently with the right, dominant upper extremity and up to 10 pounds with the left, non-dominant upper extremity. He can stand and/or walk for 4 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday. There should be no climbing of ladders, ropes, or scaffolds. Reaching, handling, and fingering with the left upper extremity are limited to occasional. [Plaintiff] can do simple, non-production rate pace jobs with only occasional interaction with the public, coworkers, and supervisors.

(R. 35.) At Step Four, the ALJ found that "[t]hrough the date last insured, [Plaintiff] was unable to perform any past relevant work." (R. 37.) At Step Five, the ALJ found that "[t]hrough the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy [that Plaintiff] could have performed." (R. 37–38.)

reversed and that he be awarded benefits, or, in the alternative, that his case be remanded to the agency "for a *de novo* hearing [with] representation [by] counsel" and "for full development and consideration of all of the evidence." (ECF No. 13, page 3.)

## II.
## STANDARD OF REVIEW

"Judicial review of the Commissioner's decision to deny benefits 'is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards are applied.'" *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "In addition, a reviewing court must be satisfied that the claimant has had 'a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act.'" *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980) (quoting *Gold v. Secretary of HEW*, 463 F.2d 38, 43 (2d Cir. 1972)). As the parties here seek disposition by means of summary judgment, the Court applies Federal Rule of Civil Procedure 56, which states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

# III.
# LEGAL ANALYSIS

Plaintiff argues that the ALJ's refusal to allow his wife to assist him at the hearing was error and resulted in the ALJ failing to fully and fairly develop the record with respect to Plaintiff's depression and attendant mental impairments. (ECF No. 13, pages 9–10, 18–21.) The Court agrees.

**A.       Plaintiff Was Entitled To Representation Before The ALJ.**

The Social Security Act and regulations promulgated thereunder entitle claimants to have an attorney or non-attorney represent them before the agency. 42 U.S.C. § 406(a)(1); 20 CFR § 404.1705. The regulation governing non-attorney representation states:

> You may appoint any person who is not an attorney to be your representative in dealings with us if the person—
>
> (1) is capable of giving valuable help to you in connection with your claim;
>
> (2) is not disqualified or suspended from acting as a representative in dealings with us;
>
> (3) is not prohibited by law from acting as a representative; and
>
> (4) is generally known to have a good character and reputation. Persons lacking good character and reputation, include, but are not limited to, persons who have a final conviction of a felony (as defined by § 404.1506(c)) or any crime involving moral turpitude, dishonesty, false statements, misrepresentation, deceit, or theft.

20 CFR § 404.1705(b).

As an initial matter, the Court finds the following statement in the ALJ's written decision to be wholly unsupported by the record: "Although informed of the entitlement to representation, [Plaintiff] chose to appear and testify without the assistance of an attorney or other representative." (R. 27.) As the transcript shows, Plaintiff requested his wife's assistance at the hearing, and there is no question that such assistance fell within the scope of Plaintiff's right to representation. *See* 20 CFR § 404.1710(a) (stating that a representative may, inter alia, "submit evidence," "make statements about facts and law," and "make any request or give any notice about the proceedings" on behalf of the claimant). The ALJ's response was less than straightforward, but his failure to expressly rule on Plaintiff's request amounted to a *de facto* denial of that request. That the ALJ ultimately obtained an affirmative response from Plaintiff to the question of whether Plaintiff "want[ed] to go forward today without representation" is of no moment. Under the circumstances, Plaintiff did not voluntarily forgo his right to representation by his wife.

The record also contradicts the Acting Commissioner's assertion that Plaintiff "wanted his wife in the hearing as moral support and comfort as opposed to helping him with his case." (ECF No. 14, page 5.) In explaining his request, Plaintiff noted that he was on sedatives, stated that he "can't be around a lot of people because I'll have panic attacks," and stressed that his wife "knows everything that's going on" in his case. This was more than enough to demonstrate that his wife was "capable of

giving valuable help to [him] in connection with [his] claim." 20 CFR § 404.1705(b)(1). The ALJ, however, failed to provide any valid reason for denying Plaintiff's request. Accordingly, the Court concludes that the ALJ's denial of Plaintiff's request that his wife be permitted to assist him as his representative at the hearing violated Plaintiff's right to non-attorney representation.

**B.     The ALJ Failed To Develop The Record.**

"The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). "When he fails in that duty, he does not have before him sufficient facts on which to make an informed decision," and "[c]onsequently, his decision is not supported by substantial evidence." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). When a claimant is unrepresented by counsel, the ALJ has a heightened duty "to develop the facts fully and fairly and to probe conscientiously for all of the relevant information." *Ware v. Schweiker*, 651 F.2d 408, 414 (5th Cir. 1981); *accord McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("The ALJ must be 'especially diligent' when the claimant is unrepresented or has only a lay representative . . . ."). Furthermore, "additional diligence is often warranted when the claimant suffers from alleged mental disability" or "may be mentally ill." *Torres-Pagan v. Berryhill*, 899 F.3d 54, 60 (1st Cir. 2018); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.

2001) ("The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests.").

The Court will assume, without deciding, that the ALJ's improper denial of Plaintiff's request for non-attorney representation is subject to harmless error analysis. Ordinarily, a claimant must "show[] (1) that the ALJ failed to fulfill his duty to adequately develop the record, and (2) that the claimant was prejudiced thereby." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). However, in the circumstances of this case—i.e., where the ALJ improperly denied Plaintiff representation during the hearing and where there was a reasonable basis to believe that Plaintiff's mental condition could impair his ability to represent himself to the fullest—the Court concludes that the Acting Commissioner must bear that burden. *See Vivaritas v. Comm'r of Soc. Sec.*, 264 F. App'x 155, 158 (3d Cir. 2008) ("[I]f the ALJ does not obtain a valid waiver of counsel, the burden is on the Commissioner to show the ALJ adequately developed the record." (quoting *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007))); *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994) ("[I]f the ALJ does not obtain a valid waiver, the burden is on the Secretary to show the ALJ adequately developed the record."); *Gullett v. Chater*, 973 F. Supp. 614, 622 (E.D. Tex. 1997) (adopting shifted burden); *Beth v. Astrue*, 494 F. Supp. 2d 979, 1002–03 (E.D. Wis. 2007); *see also Torres-Pagan*, 899 F.3d at 60 (rejecting Commissioner's argument that claimant "failed to demonstrate how he was

prejudiced by [certain] records being left out of the record" and explaining that "individuals with psychiatric disorders are often some of the most vulnerable in society and unlike the standard *pro se* claimant at an SSA hearing, those with alleged disabilities sounding in mental health may be particularly vulnerable when unrepresented by counsel."). Without the shifting of this burden, no effective sanction would exist for an ALJ's improper denial of a claimant's right to representation. *See Binion*, 13 F.3d at 245.

The Acting Commissioner has failed to demonstrate that the ALJ complied with his heightened duty to fully and fairly develop the facts in connection with Step Three of his analysis of Plaintiff's claim. The question at Step Three is "whether the claimant's impairment meets or equals the severity of an impairment listed in [the applicable regulations]." *Perez*, 415 F.3d at 461. The ALJ found that, through March 31, 2015, Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (R. 33.)[2]

---

[2] With respect to Plaintiff's depression, the ALJ explained this finding as follows:

For a claimant to demonstrate that his impairment matches a Listing, he must meet all of the specified medical criteria; an impairment that manifests only some of the criteria, no matter how severely, does not qualify. I have reviewed the medical evidence and find the severity of the claimant's impairments does not meet or equal a listed impairment, alone or in combination. All relevant listings were considered in light of the clinical signs and diagnostic findings in the medical evidence.

***

The severity of the claimant's mental impairment did not meet or medically equal the criteria of listing 12.04. In making this finding, I have considered whether the "paragraph B" criteria were satisfied. To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant had mild restriction. The quality of these activities is assessed by their independence, appropriateness, effectiveness, and sustainability, to determine the extent to which the claimant is capable of initiating and participating in activities independent of supervision or direction.

In social functioning, the claimant had moderate difficulties. Social functioning refers to the claimant's capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. The claimant testified he is depressed because he cannot do what he used to do and now he cannot be around anyone any more [sic].

With regard to concentration, persistence or pace, the claimant had moderate difficulties. Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work setting but may be found in other settings. The claimant reported a decreased ability to concentrate and a tendency towards indecisiveness (See Exhibit 5F).

As for episodes of decompensation, the claimant had experienced no episodes of decompensation, which have been of extended duration. An episode of decompensation of extended duration is an exacerbation or temporary increase in symptoms or signs accomplished by loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships or maintaining concentration, persistence or pace lasting at least two weeks (20 CFR Part 404, Subpart P, Appendix 1, 12.00(C)(4)). There is no evidence of exacerbations or temporary increases in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two), nor is there a showing of a significant alteration in medication; or documentation of the need for a more structured psychological support system.

Because the claimant's mental impairment did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria were not satisfied.

I have also considered whether the "paragraph C" criteria were satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. There is no evidence the claimant is unable to function outside of his home or that a slight increase in mental demands or change in environment would be expected to result in decompensation.

***

The ALJ's Step Three analysis suffers from two glaring infirmities.[3] First, although the ALJ found that Plaintiff had not suffered "repeated episodes of decompensation, each of extended duration," the ALJ failed to question Plaintiff on that subject at the hearing. There do not appear to be any medical records showing that Plaintiff was hospitalized during the relevant period, but "hospitalizations are not the only way a claimant can satisfy the decompensation requirement." *Yurt v. Colvin*, 758 F.3d 850, 861 (7th Cir. 2014). Nor does it appear that the various other medical documents in the record would necessarily have contained any relevant information regarding periods of decompensation if treatment was not sought at the time. By not conducting a meaningful inquiry on this point, the ALJ failed to comply with his heightened duty to develop the record.

Similarly deficient is the ALJ's development of the evidence related to Plaintiff's "social functioning" dimension. Notably, Plaintiff informed the ALJ during the hearing that he and his wife were having marital "troubles." (R. 65.)

---

I concluded the medical evidence did not demonstrate the claimant's impairments rose to the level of listing level severity, and that no acceptable medical source had mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination. In reaching this conclusion, I considered the opinions of the State Agency medical consultant who evaluated the issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion (20 CFR 404.1527(f) and SSR 96-6p).

(R. 33–35.)

[3] The Court does not hold that the remainder of the ALJ's Step Three analysis is sound. On remand, the agency should conduct its Step Three analysis anew, and that analysis will be subject to judicial review in a subsequent proceeding, if appropriate.

However, instead of inquiring further into the topic in the interest of conducting a full and fair Step Three inquiry, the ALJ appeared interested in the topic only to the extent he thought it provided a justification for *not* calling Plaintiff's wife to testify. (*Id.*) Had the ALJ not impermissibly barred Plaintiff's wife from representing him during the hearing, she could well have agreed to testify and provided important evidence indicating that Plaintiff suffered "marked"—as oppose to "moderate"—difficulties in maintaining social functioning. *See Ivy v. Sullivan*, 898 F.2d 1045, 1049 (5th Cir. 1990) ("[E]stablished policy provides that information may be obtained from family members, friends, and former employers regarding the course of the claimant's condition."). Taken together, findings that Plaintiff suffered marked difficulties in maintaining social functioning and repeated episodes of decompensation, each of extended duration, would have satisfied Step Three and resulted in a favorable decision for Plaintiff.

Considering these infirmities in the ALJ's development of the record relating to Step Three of the analysis, the Court concludes that the Acting Commissioner has not met her burden of demonstrating that the ALJ complied with his heightened duty to fully and fairly develop the record. Given the prejudicial nature of this failure, the Court further concludes that this matter must be remanded to the Commissioner for a new hearing.

Because the foregoing analysis suffices to warrant a full remand to the agency, the Court does not reach Plaintiff's additional arguments that the ALJ failed to consider all the relevant evidence that was adduced. (ECF No. 13, pages 21–29.) "Without expressing an opinion as to whether any of these arguments ultimately would prevail if adjudicated on their merits, the undersigned observes that none is patently frivolous. Accordingly, upon remand the Commissioner should be mindful of them when making a new determination." *Kinslow v. Colvin*, No. 5:12-CV-1541 GLS/ESH, 2014 WL 788793, at *7 (N.D.N.Y. Feb. 25, 2014).

## CONCLUSION

For the reasons stated above, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is GRANTED insofar as it seeks remand of this matter to the Acting Commissioner;

2. Defendant's motion for summary judgment is DENIED;

3. The Acting Commissioner's decision denying Plaintiff's application for disability insurance benefits is VACATED;

4. This matter is REMANDED to the Acting Commissioner; and

5. The Acting Commissioner is INSTRUCTED to: conduct a new hearing at which Plaintiff shall not be denied the right to representation in accordance with the Social Security Act and attendant regulations; reconsider *de novo* Plaintiff's application for benefits in light of any and all additional findings and evidence

adduced at the new hearing; and conduct such further appropriate proceedings as are not inconsistent with this opinion.

Signed on March 28, 2019, at Houston, Texas.

*Dena Palermo*
_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**